IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRANDON B. EVERETTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 C 5428 |
| ) | |
| ) | HONORABLE CHARLES R. NORGLE |
| UNION PACIFIC RAILROAD, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Plaintiff alleges violations of Title VII, 42 U.S.C. § 1981, and the Illinois Human Rights Act, 775 ILL. COMP. STAT. 5/2-102(a). ("IHRA"). The Railroad seeks to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), because the allegations require the interpretation of the terms and conditions of a collective bargaining agreement ("CBA"), under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, et seq. However, the court notes that the overarching issue in this case is venue, rather than jurisdiction. As a result, the court grants Defendant's Motion, and dismisses the complaint on improper venue grounds pursuant to Federal Rule of Civil Procedure 12(b)(3).

**I. BACKGROUND**

**A. Facts**

This case arises out of Plaintiff Brandon Everette's termination from his job with Defendant Union Pacific Railroad ("Union Pacific"). Starting in 1998, Brandon Everette ("Everette") worked as a trainman/conductor at Union Pacific's south suburban railroad yard located in Dolton, Illinois. On

1

February 6, 2003, Everette filed a charge against Union Pacific with the Equal Employment Opportunity Commission ("EEOC"). Then, on June 6, 2003, Everette filed a second charge with the EEOC against Union Pacific. Everette concedes that he has been suspended from his job on three separate occasions. He alleges, however, that each suspension was later "unfounded."

In August 2003, Everette received what he called Union Pacific's "Remote Control Operators Package." This package informed Everette that he was a candidate for a position as a remote control locomotive operator, and included details on specific requirements for certification as a remote control operator. Evertte believed that completion of this application was optional. He does not explain the duties and responsibilities of a Remote Control Operator. However, Everette does state that he was not interested in the position, and did not complete the forms.

On November 27, 2003, Everette alleges that he received a "telephone message" from Union Pacific suspending his employment. That same day, Everette called his local union, United Transportation Union Local 528 ("Local 528") and informed the union of his suspension for failure to complete the application package. Then, on January 6, 2004, four months after he received the application package, Everette alleges that Union Pacific forwarded a letter to a Mr. Dan Johnson ("Johnson") explaining that trainmen were required to have Remote Control operator qualifications because there were not enough interested volunteer employees. Everette does not explain who Johnson is, or why Union Pacific would forward him this letter. The next week, on January 14, 2004, Everette again filed charges with the EEOC.

On February 2, 2004, Union Pacific submitted its Notice of Investigation to Everette, two

months after his suspension.[1] Then, on February 23, 2004, Union Pacific issued a written response to Everette's EEOC charge of January 14, 2004. In its Response, the EEOC alleges that the Remote Control Operator qualifications were mandatory, instead of optional, as Everette claims. Additionally, Everette claims that Union Pacific stated that beginning on December 1, 2003, the "XS65 Board would be abolished and replaced with the XS63 Board." Everette does not explain the significance of such a change, nor the distinction between "XS63" and "XS65" boards.

On January 1, 2004, Everette alleges that Union Pacific informed him that disciplinary action would be taken against him for his failure to complete the application package. Then in February 2004, approximately eighty days after Everette's termination, he submitted the application package to Union Pacific. The next day, Everette's termination was dismissed and he returned to work. Then, on February 25, 2004, Everette submitted a form called a UTU Discipline Income Protection Program application for return income for the time he missed while on suspension. According to Everette, he has not yet received any lost income.

On May 29, 2005, a train derailed. Everett does not say where this occurred, or the relevance between the derailment and his employment with Union Pacific. Everette further claims that an investigation occurred and "managers" determined that the "cause of the accident was wide gauge." Am. Compl., ¶ 47. According to Everette, this meant that he was not at fault. Everett does not explain the definition of "wide gauge" or how it relates to the accident in question. Furthermore, Everette claims that on May 29, he was questioned for nine hours by Union Pacific authorities. As a result of this questioning, Everette alleges that he suffered an anxiety attack, and was rushed to the nearest emergency room. He has not returned to work since May 29, 2005.

---

[1] The court notes that in the Complaint, Everette interchanges the words "termination," Am. Compl, ¶ 20, with "suspension." Id., ¶ 27.

3

## B. Procedural History

On May 21, 2004, Everette received his Notice of Right to Sue letter from the EEOC. On August 17, 2004, Everette filed his Complaint in the Northern District of Illinois, and on June 28, 2005, he filed his Amended Complaint. Then, on June 2, 2006, Union Pacific filed its Motion to Dismiss. Everette filed his Response on June 27, 2006. Union Pacific did not file a Reply. The Motion to Dismiss is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

#### *1. Federal Court Jurisdiction*

The court "has an independent obligation to satisfy itself that federal subject matter jurisdiction exists before proceeding to the merits in any case." Am. Gen. Life & Accident Ins. Co., 337 F.3d 888, 892 (7th Cir. 2003). Federal courts are "always obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." Tylka v. Gerber Prods. Co., 211 F.3d 445, 447-48 (7th Cir. 2000) (quotation and internal marks omitted). "The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged." Wisconsin Knife Works v. National Metal Crafters, 781 F.2d 1280, 1282 (7th Cir. 1986). In Market Street Assocs. Ltd. Partnership v. Frey, the Seventh Circuit stated: "We remind the bench and bar of this circuit that it is their nondelegable duty to police the limits of federal jurisdiction with meticulous care . . . ." Market Street Assocs. Ltd Partnership, 941 F.2d 588, 590 (7th Cir. 1991); see also Hart v. Terminex Intern., 336 F.3d 541, 544 (7th Cir. 2003) (reiterating the admonition that litigants and courts must "meticulously review the limits of federal jurisdiction" so as to avoid the "waste of federal judicial resources and delay of justice" that occurs where a case is found to lack subject matter jurisdiction only after proceeding on the merits); see also U.S. v. Lloyd, 398 F.3d 978 (7th Cir. 2005).

4

### *2. Rule 12(b)(3)*

Under Federal Rule of Procedure 12(b)(3), a case may be dismissed for lack of proper venue. Where parties to a contract have agreed to arbitrate disputes arising from that contract, dismissal pursuant to Rule 12(b)(3) is appropriate. See Metro. Life Ins. Co. v. O'Malley, 392 F. Supp. 2d 1042 (N.D. Ill. 2005); see also Cont'l Ins. Co. v. M/V Orsula, 354 F.3d 603, 606-07 (7th Cir. 2003) ("A lack of venue challenge, based upon a forum selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss."); Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 733 (7th Cir. 2005) ("We have held dismissal [where both parties to a contract have agreed to arbitrate disputes] to be appropriate, and, when the question has arisen, we have held that such dismissal properly is requested under Rule 12(b)(3).") (citations omitted).

### *3. Arbitration Provision*

As a preliminary matter, the court notes that the overarching issue in this case is the proper venue, not jurisdiction. The court has subject matter jurisdiction, by virtue of Everette's reliance on 42 U.S.C. § 1981 in his Complaint. However, the RLA provides the venue for exclusive and mandatory arbitration for disputes between employees and management of a common carrier:

> The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions... shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes. 45 U.S.C. § 153(I)

Courts have held that the language in the RLA provides for mandatory arbitration. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994); Coker v. Transworld Airlines, Inc., 165 F.3d 579, 583 (7th Cir. 1999). The court is mindful that arbitration forgoes the costly expenses of

5

litigation for a more economical method to solve legal disputes. "Parties that opt for arbitration trade the formalities of the judicial process for the expertise and expedition associated with arbitration, a less formal process of dispute resolution by an umpire who is neither a generalist judge nor a juror but instead brings to the assignment knowledge of the commercial setting in which the dispute arose." Lefkovitz v. Wagner, 395 F.3d 773, 780 (7th Cir. 2005) (internal citations omitted). In addition, "parties are bound to an arbitration provision even if they did not read the provision." James v. McDonald's Corp., 417 F.3d 672, 678 (7th Cir. 2005). Arbitration is contractual by nature; "a party can be compelled to arbitrate only those matters that she has agreed to submit to arbitration." Id. at 677 (citing First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 945 (1995); Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1130 (7th Cir. 1997)). Federal courts have long approved of arbitration as a legitimate form of dispute resolution. See Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673 (7th Cir. 1983).

### 4. The issue in the present case is a "minor issue"

The issue in this case is only a "minor dispute" under the RLA. See 45 U.S.C. § 153(I). Minor disputes are those that "grow out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." Id., see Chicago & North Western Trans. Co. v. Railway Labor Executives Ass'n, 908 F.2d 144, 148 (7th Cir. 1990). Furthermore, "the RLA grants exclusive jurisdiction to resolve minor disputes regarding railway labor agreements to arbitrators on the National Railroad Adjustment Board or *adjustment boards established by an employer and a union.*" Brotherhood of Maintenance of Way Employees v. Union Pacific R.R. Co., 358 F.3d 453, 456 (7th Cir. 2004) (emphasis added). The "distinguishing feature of a minor dispute is that the dispute can be conclusively resolved by interpreting the existing CBA." Brown v. Illinois Central R.R. Co.,

254 F.3d 654, 658 (7th Cir. 2001) (citing Monroe v. Missouri Pacific R.R. Co., 115 F.3d 514, 516 (7th Cir. 1997)); Hawaiian Airlines, Inc., 512 U.S. at 252).

Here, the issue in this case centers around whether the CBA permits Union Pacific to require that Everette obtain training as a remote control operator. Furthermore, Everette's claims involve issues such as his right to back pay, and his removal and eventual return to the seniority roster depend on interpretations of the CBA. These claims are raised for the first time in the District Court; they were never brought before the National Railroad Adjustment Boards and Public Law Boards. See 45 U.S.C. §§ 153. Therefore, a decision on the merits of this case will necessarily revolve around the court's definition of the parties duties under the CBA. "A plaintiff's claim is properly characterized as a minor dispute (and is therefore subject to mandatory and exclusive arbitration under the RLA) when the resolution of the plaintiff's claim requires interpretation of the CBA." Brown, 254 F.3d at 654. Because Everette's case centers around issues found exclusively in the CBA, the district court is the improper venue for this action. See Brotherhood of Maintenance of Way Employees, 358 F.3d at 456.

Both parties agreed to arbitration when they entered the CBA. They traded "the formalities of the judicial process for the expertise and expedition associated with arbitration." Lefkovitz, 395 F.3d at 780. The parties are not allowed to ignore this signed agreement in favor of litigation in federal court. While the court has jurisdiction over this case, the Northern District of Illinois is an inappropriate venue. See Continental Ins. Co., 354 F.3d at 608. (district court has wide discretion to dismiss a case for improper venue if the decision is in conformity with established legal principles and, in terms of the court's application of those principles to the facts of the case, is within the range of options from which a reasonable trial judge would select). Moreover, the "RLA establishes a comprehensive framework to control labor relations and resolve labor disputes involving railroads." Int'l Brotherhood of Electrical Workers v. CSX Transportation, Inc., 446 F.3d 714, 717 (7th Cir.

2006). As a result, the proper venue for this dispute is before the System Board, and not in the United States District Court for the Northern District of Illinois.

### III. CONCLUSION

For the reasons stated above, the Complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3).

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 9/5/06